IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| FIRST CHICAGO INSURANCE COMPANY, an Illinois corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>NUNEZ CONCRETE, LLC, an Indiana limited liability company, ERIE INSURANCE EXCHANGE, and UNIVERSAL ENTERPRISES L&F, LLC, an Indiana limited liability company,<br><br>    Defendant. | Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, FIRST CHICAGO INSURANCE COMPANY ("First Chicago"), by and through its counsel, Donald Patrick Eckler of FREEMAN MATHIS & GARY, LLP, brings this Complaint for Declaratory Judgment against Defendants, NUNEZ CONCRETE, LLC, ("Nunez Concrete"), ERIE INSURANCE EXCHANGE ("Erie"), and UNIVERSAL ENTERPRISES L&F, LLC ("Universal"), and alleges and states as follows:

**INTRODUCTION**

1.  First Chicago brings this action to obtain a declaratory judgment that it is entitled to rescind an insurance policy *ab initio*, policy no. IGL 671847-00, that it issued to Nunez Concrete for the effective period of February 27, 2021 to February 27, 2022 ("Policy"), because the February 27, 2021 application for insurance, which was the basis for First Chicago's decision to issue the Policy, contained material misrepresentations regarding Nunez Concrete's business and operations. In particular, Nunez Concrete misrepresented that it neither performed work under written contract nor provided excavation services, both of which are at issue in the lawsuit styled *Erie Insurance Exchange and Universal Enterprises L&F LLC v. Nunez Concrete, LLC*, Cause No. 49D11-2209-CT-030723,

pending in the Superior Court of Marion County, Indiana ("Subrogation Lawsuit"). The Subrogation Lawsuit specifically alleges that Nunez Concrete contracted to provide excavation services in February 2021, at or before the time the application for insurance for the Policy was submitted to First Chicago.

2. The material misrepresentations in the February 27, 2021 application for insurance completed by Nunez Concrete renders the Policy unenforceable and precludes coverage for all claims and lawsuits, including the Subrogation Lawsuit, tendered for coverage under the Policy.

3. Alternatively, and without prejudice to its right to a declaration of rescission, First Chicago seeks judicial declarations that it does not have a duty to defend or indemnify Nunez Concrete for the Subrogation Lawsuit based on the lack of an "occurrence," by application of certain exclusions in the Policy, including the Damage to Property and Damage to Impaired Property or Property Not Physically Injured Exclusions, the Exclusion-Explosion, Collapse and Underground Property Damage Hazard (Specified Operations Expected) Endorsement, and the Exclusion-Classification Limitation Endorsement, and for breach of certain conditions in the Policy, including Condition 6. Representations, and Condition 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.

## JURISDICTION & VENUE

4. Plaintiff, First Chicago, is a corporation organized under the laws of Illinois with its principal place of business in Bedford Park, Illinois.

5. Defendant, Nunez Concrete, is a dissolved limited liability company that was organized under the laws of Indiana whose sole member, Gricelda Nunez, is a citizen of Indiana.

6. Defendant, Erie, is an insurance reciprocal exchange organized under the laws of Pennsylvania with its principal place of business in Erie, Pennsylvania.

7. Defendant, Universal, is a limited liability company organized under the laws of Indiana whose sole member, Lester Martinez, is a citizen of Indiana.

8. Jurisdiction here is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between

Plaintiff, First Chicago, and Defendants, Nunez Concrete, Erie, and Universal; and (b) the amount in controversy with regards to the Subrogation Lawsuit well exceeds $75,000.

9. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this action occurred in this District, including where the Policy was issued and delivered, and where the Subrogation Lawsuit is pending.

10. An actual justiciable controversy exists between First Chicago, on the one hand, and Nunez Concrete, Erie, and Universal, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## POLICY

11. First Chicago issued to Nunez Concrete the Policy, No. IGL 671847-00, for the February 27, 2021 to February 27, 2022 policy period. A true and correct copy of the Policy is attached hereto and incorporated herein as **Exhibit A**.

12. The Policy Declarations describe Nunez Concrete's business operations as "Concrete Work." **Ex. A**, p. 4.

13. The Policy includes, in pertinent part, the following applicable provisions:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for … "property damage" to which this insurance does not apply.

\* \* \*

    **b.**    This insurance applies to … "property damage" only if:

        (1)    The … "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]

        (2)    The … "property damage" occurs during the policy period;

\* \* \*

**2.**    **Exclusions**

This insurance does not apply to: …

    **j.**    **Damage To Property**

"Property damage" to: …

    **(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    **(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

\* \* \*

    **m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    **(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

>This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * *

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

* * *

**2.** **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;
        **(2)** The names and addresses of any injured persons and witnesses; and
        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:
        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
        **(2)** Authorize us to obtain records and other information;
        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

     **d.**     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

* * *

**6.**     **Representations**

By accepting this policy, you agree:

     **a.**     The statements in the Declarations are accurate and complete;
     **b.**     Those statements are based upon representations you made to us; and
     **c.**     We have issued this policy in reliance upon your representations.

* * *

## SECTION V – DEFINITIONS

* * *

**8.**     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

     **a.**     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
     **b.**     You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

* * *

**16.**     "Products-completed operations hazard":

     **a.**     Includes all … "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

          **(1)**     Products that are still in your physical possession; or

          **(2)**     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include … "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products completed operations are subject to the General Aggregate Limit.

      \* \* \*

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

> **(2)** The providing of or failure to provide warnings or instructions.

* * *

**Ex. A**, pp. 6, 9-10, 15-21.

14. The Policy includes the Exclusion–Explosion, Collapse and Underground Property Damage Hazard (Specified Operations Expected) Endorsement (form no. CG 21 43 12 04), which provides as follows:

> **A.** The following exclusion is added to Paragraph **2. Exclusions** in **Section I – Coverages:**
>
> This insurance does not apply to "property damage" arising out of the "explosion hazard", the "collapse hazard" or the "underground property damage hazard".
>
> This exclusion does not apply to: …
>
> > **a.** Operations performed for you by others;
> > **b.** "Property damage" included within the "products-completed operations hazard"; or
> > **c.** Any operation described in the Schedule above, if any of these hazards is entered as a covered hazard.
>
> **B.** The following definitions are added to the **Definitions** Section:
>
> > **1.** "Collapse hazard" includes "structural property damage" and any resulting "property damage" to any other property at any time.
> >
> > **2.** "Explosion hazard" includes "property damage" arising out of blasting or explosion. …
> >
> > **3.** "Structural property damage" means the collapse of or structural injury to any building or structure due to:
> >
> > > **a.** Grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work; or
> > > **b.** Moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support of that building or structure.
> >
> > **4.** "Underground property damage hazard" includes "underground property damage" and any resulting "property damage" to any other property at any time.

> **5.** "Underground property damage" means "property damage" to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus used with them beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving.

* * *

**Ex. A**, pp. 35.

15. The Policy includes the Classification Limitation Endorsement (form no. CM 00 05 01 06), which provides that the Policy does not apply to "property damage" for "operations that are not classified or shown in the Commercial General Liability Coverage Part Declarations, its endorsements or supplements." **Ex. A**, p. 66.

## APPLICATION FOR AND UNDERWRITING OF THE POLICY

16. On February 27, 2021, Gricelda Nunez, on behalf of Nunez Concrete, submitted to First Chicago an Indiana Artisan General Liability Application for insurance ("Application"). A true and correct copy of the Application is attached hereto and incorporated herein as **Exhibit B**.

17. The Application identified the applicant as Nunez Concrete, the producer as Latina Insurance Services, and provided Nunez Concrete's "Description of Business" as "Concrete Work." **Ex. B**, p. 1.

18. The Application represented "No" in response to whether Nunez Concrete "perform[s] under written contract." **Ex. B**, p. 2.

19. Under the "Operations Survey" included in the Application, Nunez Concrete represented "No" in response to whether it conducts "excavation." **Ex. B**, p. 2.

20. The Application includes a "Fraud Warning" and the following language:

> This application does not bind the applicant nor the Company to complete the insurance – but it is agreed that the information contained herein ARE MATERIAL REPRESENTATIONS BY THE APPLICATION – and shall be the basis of the contract should a policy be issued.

\* \* \*

**Ex. B**, p. 3.

## SUBROGATION LAWSUIT

21.     On September 6, 2022, Erie and Universal initiated the Subrogation Lawsuit by filing a complaint at law against Nunez Concrete, which asserted five counts ("Complaint"). A true and correct copy of the Complaint in the Subrogation Lawsuit, with its original exhibits, is attached hereto and incorporated herein as **Exhibit C**.[1]

22.     The Complaint alleges that on or about November 18, 2020, Jonathan Ting and Yar Luan Yeap ("Owner") contracted with Universal to build a basement beneath the home located at 5105 Grandview Drive, Indianapolis, Indiana ("Home"). **Ex. C**, ¶ 4; *see also* **Ex. C-1**.

23.     The Complaint alleges that on February 3, 2021, Universal subcontracted with Nunez Concrete to perform construction work at the Home ("Subcontractor Agreement"), and that during the spring and early summer months of 2021, Nunez Concrete performed work at the Home pursuant to the Subcontractor Agreement. **Ex. C**, ¶¶ 5-6; *see also* **Ex. C-2**.

24.     The Complaint alleges that on or about July 22, 2021, after delays in the work at the Home and "stop orders" issued by the City of Indianapolis regarding the work performed by Nunez Concrete at the Home, it was determined that the work performed by Nunez Concrete was defective and did not meet industry standards, was not compliant with applicable building codes, and proximately caused additional damage to other areas of the Home. **Ex. C**, ¶ 7.

25.     The Complaint alleges that after "being put on notice of these defects and demanding that Nunez Concrete remedy same, Nunez Concrete failed to remedy the defective construction work and further failed to repair the additional, ensuing damages to the [Home] caused by this defective construction work." **Ex. C**, ¶ 8.

26.     As a result, it is alleged that the Home incurred damage in the amount of $477,482.06,

---

[1] The original exhibits to the Complaint are referred to herein as **Exhibits C-1**, **C-2**, **C-3**, **C-4**, **C-5**, and **C-6**.

which Erie paid on Universal's behalf on July 4, 2022 pursuant to a "Release Agreement." **Ex. C**, ¶¶ 9-12; *see also* **Ex. C-3**.

27. The alleged Release Agreement provides, in pertinent part, as follows regarding Nunez Concrete's work at the Home pursuant to the Subcontractor Agreement:

> WHEREAS, [Universal] entered into an agreement with [the Owner] in which Universal agreed to renovate the existing crawl space at [the Home] into a basement and playroom area; and
>
> WHEREAS, Universal entered into a subcontract with [Nunez Concrete] for [Nunez Concrete] to excavate under the [Home], to replace and shore-up the foundation, and build the basement; and
>
> * * *

**Ex. C-3**, p. 1.

28. Count I of the Complaint for "Breach of Contract" alleges Nunez Concrete breached the Subcontractor Agreement, which caused the damage to the Home, and requests $477,482.06, prejudgment interest, costs, and all other just and proper relief. **Ex. C**, ¶¶ 13-15; *see also* **Ex. C-2**.

29. Count II for "Breach of Implied Duty to Perform Work in a Skillful and Workmanlike Manner" alleges common law duties to perform work in a skillful and workmanlike manner, that Nunez Concrete breached this duty, which caused the damage to the Home, and requests the same damages as Count I. **Ex. C**, ¶¶ 16-19.

30. Count III for "Breach of Express Warranty" alleges that the Subcontractor Agreement warranted that the work of Nunez concrete to be "performed, at a minimum, in accordance with industry standards," which Nunez Concrete materially breached, and requests the same damages as the prior counts. **Ex. C**, ¶¶ 20-23.

31. Count IV for "Indemnification" alleges that the Subcontractor Agreement contains an indemnification provision, that Nunez Concrete rejected Erie's tenders of defense and indemnification dated September 23, 2021, March 4, 2022, and April 12, 2022 "by means of a letter dated March 24, 2022," and that Nunez Concrete must indemnify Universal and Erie for the damages

sought. **Ex. C**, ¶¶ 20-27.

32. Count V is for "Negligence" and alleges that Nunez Concrete negligently performed construction work at the Home during the "spring and early summer months of 2021," which caused damage to the Home, and requests the same damages sought in the prior counts. **Ex. C**, ¶¶ 28-30.

## NOTICE OF DEFECTIVE WORK AND MATERIAL MISREPRESENTATIONS TO FIRST CHICAGO

33. On or about August 25, 2021, Erie reported to First Chicago that Nunez Concrete did not complete its work at the Home and that Nunez Concrete's work was generally deficient; however, neither the Subcontractor Agreement nor the entire scope of work was provided to First Chicago.

34. Thereafter, on at least September 2, 2021, September 15, 2021 and September 29, 2021, First Chicago attempted to contact Nunez Concrete regarding the claim made by Erie on behalf of Universal, but Nunez Concrete has never responded to First Chicago's requests for cooperation.

35. On March 4, 2022, Erie issued a letter to First Chicago which demanded defense and indemnification for the damage to the Home, as follows:

> … The property owner, Jonathan Ting, at the address of 5105 Grandview Drive, Indianapolis, Indiana hired our insured, [Universal] as a general contractor to put a basement in his existing [Home]. [Nunez Concrete] was hired as a subcontractor by Universal to recondition an existing crawl space area for a playroom. Due to [Nunez Concrete's] faulty/incomplete work, there was extensive damage to [the Home].

**Ex. C-5**.

36. On March 24, 2022, First Chicago rejected Erie's tender because after a "review of the [Policy], [Universal] is not named as an additional insured" and, therefore, the Company has "no contractual obligation to provide a defense or indemnify [Universal]." **Ex. C-6**. First Chicago also advised that the Policy "does not cover damages for poor work product, lack of supervision, and/or breach of contract." *Id*.

37. On July 4, 2022, Erie settled the Owner's claim for damage to the Home on behalf of Universal. **Ex. C**, ¶¶ 9-12; *see also* **Ex. C-3**.

38. Service of the Complaint in the Subrogation Lawsuit on First Chicago was the first time that First Chicago was fully informed of the contractual nature and specific work agreed to by Nunez Concrete pursuant to the Subcontractor Agreement. **Ex. C-2**.

39. Service of the Complaint in the Subrogation Lawsuit on First Chicago was the first time that First Chicago was provided the Release Agreement. **Ex. C-3**.

40. On October 19, 2022, First Chicago issued correspondence to Nunez Concrete that the Policy would be rescinded effective February 27, 2022, and all premium payments returned. A true and correct copy of the October 19, 2022 letter is attached hereto and incorporated herein as **Exhibit D**.

41. By letters dated October 21, 2022 and November 2, 2022, First Chicago, by counsel, issued correspondence to Nunez Concrete, Erie, and Universal advising that there is no coverage under the Policy for the Subrogation Lawsuit because of material misrepresentations made in the Application and, alternatively, because the Subrogation Lawsuit does not allege an "occurrence," based on several of the Policy's limitations and/or exclusions, and breach of Conditions. A copy of the October 21, 2022 and November 2, 2022 letters are attached hereto and incorporated herein as **Exhibit E-1** and **Exhibit E-2**, respectively.

42. The October 21, 2022 letter to Nunez Concrete, Erie, and Universal further advised that First Chicago intended to seek a declaration that its rescission and/or coverage position is correct. **Ex. E-1**.

## COUNT I:  RESCISSION OF THE POLICY BASED ON MATERIAL MISREPRESENTATIONS

43. First Chicago incorporates by reference paragraphs 1-42 above as fully stated herein.

44. In the Application, Nunez Concrete falsely answered questions concerning the scope and extent of its business operations and, specifically, whether it performs excavation work. **Ex. B**, pp. 1-2.

45. Nunez Concrete further misrepresented the fact that it does, in fact, perform work pursuant to written contract. **Ex. B**, pp. 1-2.

46. The omission, non-disclosure, or concealment of the true nature of Nunez Concrete's business operations prevented First Chicago from properly evaluating the underwriting risks.

47. In fact, First Chicago, based on its Underwriting Guidelines, would not have issued the Policy to Nunez Concrete had it known that Nunez Concrete provides excavation services.

48. Nunez Concrete's material misrepresentation in the Application, submitted February 27, 2021, induced First Chicago into issuing the Policy on the same day.

49. First Chicago reasonably relied upon the material misrepresentations in the Application.

50. First Chicago detrimentally relied upon the representations made by Nunez Concrete in the Application in deciding to issue the Policy.

51. Prior to filing this action, First Chicago returned to Nunez Concrete the premium previously paid by Nunez Concrete.

52. Because the Policy is void, First Chicago has no duty to defend or indemnify Nunez Concrete with respect to the Subrogation Lawsuit and/or any other claim not yet presented to First Chicago concerning the Policy.

**COUNT II: DECLARATORY JUDGMENT**
**NO DUTY TO DEFEND OR INDEMNIFY – NO "OCCURRENCE"**

53. First Chicago incorporates by reference paragraphs 1-52 above as fully stated herein.

54. Alternatively, if the Policy is not rescinded, there would still be no coverage available for some or all of the counts alleged in the Subrogation Lawsuit based on the lack of an "occurrence."

55. The Policy covers "property damage" caused by an "occurrence." **Ex. A**, p. 6.

56. The term "occurrence," as defined in the Policy, means an accident. **Ex. A**, p. 19.

57. Count I of the Complaint in the Subrogation Lawsuit alleges breach of the Subcontractor Agreement and resultant damages.

58. Count II alleges breach of implied duties with respect to the Subcontractor Agreement.

59. Count III alleges breach of express warranties with respect to the Subcontractor Agreement.

60. Count IV alleges a claim for indemnification purportedly arising from the Subcontractor Agreement.

61. Such claims as alleged in the Subrogation Lawsuit do not allege an "occurrence" or an accident and, therefore, do not trigger coverage under the Policy.

## COUNT III: DECLARATORY JUDGMENT
## NO DUTY TO DEFEND OR INDEMNIFY – EXCLUSIONS

62. First Chicago incorporates by reference paragraphs 1-61 above as fully stated herein.

63. Alternatively, if the Policy is not rescinded, there would still be no coverage available to Nunez Concrete and/or Universal pursuant to **Exclusion j. Damage to Property** because it is clear that Nunez Concrete's work was not, in fact, completed and/or was abandoned at the time the Owner claims other parts of the Home were damaged such that one or both of Exclusions j(5) and j(6) preclude coverage under the Policy.

64. Alternatively, if the Policy is not rescinded, there would still be no coverage available to Nunez Concrete and/or Universal pursuant to **Exclusion m. Damage to Impaired Property or Property Not Physically Injured** as the Subrogation Lawsuit alleges that other portions of the Home were damaged and could not be used as a result of Nunez Concrete's faulty work.

65. Alternatively, if the Policy is not rescinded, there would still be no coverage available to Nunez Concrete and/or Universal pursuant to the **Exclusion–Explosion, Collapse and Underground Property Damage Hazard (Specified Operations Expected) Endorsement** (CG 21 43 12 04) as one or more of the provisions preclude coverage for the Subrogation Lawsuit.

66. Alternatively, if the Policy is not rescinded, there would still be no coverage available to Nunez Concrete and/or Universal pursuant to the **Exclusion-Classification Limitation Endorsement** (CM 00 05 01 06), which modifies the Policy's "property damage" liability section to provide that the Policy does not apply to "property damage" for "operations that are not classified or shown in the Commercial General Liability Coverage Part Declarations, its endorsements or supplements" where the only work Nunez was classified to perform under the Policy was "Concrete Work."

### COUNT IV: DECLARATORY JUDGMENT
### BREACH OF POLICY'S SECTION IV. COVERAGE PART CONDITIONS
### 6. REPRESENTATIONS

67. First Chicago incorporates by reference paragraphs 1-66 above as fully stated herein.

68. Alternatively, if the Policy is not rescinded, the Policy's Commercial General Liability Coverage Form [CG 00 01 04 13] includes a condition that provides: "**6. Representations.** By accepting this policy, you agree: **(a)** The statements in the Declarations are accurate and complete; **(b)** Those statements are based upon representations you made to us; and **(c)** We have issued this policy in reliance upon your representations." **Ex. A**, p. 17.

69. Nunez Concrete's misrepresentations concerning the nature of its services and the scope of its services were material misrepresentation in the Application.

70. First Chicago, based on its Underwriting Guidelines, would not have issued the Policy to the extent it knew Nunez Concrete performed under contract and/or performed excavation work.

### COUNT V: DECLARATORY JUDGMENT
### BREACH OF POLICY'S SECTION IV. COVERAGE PART CONDITIONS
### 2. DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT

71. First Chicago incorporates by reference paragraphs 1-70 above as fully stated herein.

72. Alternatively, if the Policy is not rescinded, there would still be no coverage available to Nunez Concrete or Universal because the Policy's Notice Condition, a condition precedent to coverage under the Policy, requires Nunez Concrete to notify First Chicago as soon as practicable of

any "occurrence" or offense which may result in a claim.

73. However, Nunez Concrete has never reported the Subrogation Lawsuit to First Chicago, nor has it ever reported any of the correspondence it received from Erie and Universal to First Chicago.

74. Nunez Concrete has further failed to cooperate with First Chicago.

75. Because Nunez Concrete did not timely report any claim or the Subrogation Lawsuit, its unreasonable delay breached the Policy's Notice Condition.

76. Further, this breach is material because First Chicago was prejudiced by the delay, as First Chicago was deprived of the ability to fully investigate, evaluate, and adjust the claims.

77. Nunez Concrete's material breach of a condition precedent to coverage terminates any duty to defend or indemnify Nunez Concrete may arguably have under the Policy.

WHEREFORE, Plaintiff, FIRST CHICAGO INSURANCE COMPANY, respectfully requests this Court to declare and adjudge the controversy as follows:

A. The Policy is rescinded *ab initio*;

B. The material representations in the Application renders the Policy unenforceable and precludes coverage for all claims and lawsuits tendered for coverage under the Policy;

C. Alternatively, declare there is no coverage under the Policy because the Subrogation Lawsuit does not allege an "occurrence" as required by the Policy to trigger coverage;

D. Alternatively, declare there is no coverage under the Policy available to Nunez Concrete, Erie, and/or Universal pursuant to **Exclusion j. Damage to Property**;

E. Alternatively, declare there is no coverage under the Policy available to Nunez Concrete, Erie, and/or Universal pursuant to **Exclusion m. Damage to Impaired Property or Property Not Physically Injured**;

F. Alternatively, declare there is no coverage under the Policy available to Nunez Concrete, Erie, and/or Universal pursuant to the **Exclusion–Explosion, Collapse**

    and Underground Property Damage Hazard (Specified Operations Expected) Endorsement; and

G.  Alternatively, declare there is no coverage under the Policy available to Nunez Concrete, Erie, and/or Universal pursuant to the **Exclusion-Classification Limitation Endorsement**;

H.  Alternatively, declare Nunez Concrete breached the Policy's **Section IV. Coverage Part Conditions 6. Representations**;

I.  Alternatively, declare Nunez Concrete breached the Policy's **Section IV. Coverage Part Conditions 2.**, for its failure to provide notice and failure to cooperate;

J.  First Chicago is entitled to other relief that this Court deems just and equitable under the circumstances, including the award of costs.

DATED: November 2, 2022      Respectfully submitted,

                **FREEMAN MATHIS & GARY, LLP**

                By: /s/ Donald Patrick Eckler
                Attorney for First Chicago Insurance Company

Donald Patrick Eckler (25299-45)
FREEMAN MATHIS & GARY, LLP
111 W. Jackson Blvd, Suite 1700
Chicago, IL 60604
Tel: (773) 389-6446
Patrick.Eckler@fmglaw.com